UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff/Respondent,

v.

RAYMOND WESLIE WILLIAMS,

                Defendant/Petitioner.

_____/

Crim No. 16-cr-20078
Civil No. 18-cv-10845

District Judge Paul D. Borman
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PETITIONER RAYMOND WESLIE WILLIAMS' MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (DE 74)

## I.    RECOMMENDATION

For the reasons set forth below, it is recommended that Petitioner Raymond Weslie Williams' March 13, 2018 Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be **DENIED**.  (DE 74.)

## II.    REPORT

### A. Background

Petitioner's March 13, 2018 *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 is before the Court under an order of reference from Judge Paul D. Borman.  (DE 84.)

On February 9, 2016, a grand jury indicted Petitioner Raymond Weslie Williams (hereinafter "Petitioner" or "Williams") on 13 counts.  (DE 18.)   On February 15 of the following year, Williams entered into a Fed. R. Crim. P. 11 plea agreement (hereinafter the "Plea Agreement").  (DE 62.)  In it, he pleaded guilty to Count 5 of the Indictment only, which charged production of child pornography, in violation of 28 U.S.C. § 2251(a).  (*Id.*)  The factual basis for the guilty plea states:

> From on or about October 27, 2015 through on or about November 1, 2015, in the Eastern District of Michigan and elsewhere, the defendant knowingly employed, used, persuaded, enticed and coerced any minor—specifically, MV-3, a 15 year old child—to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and those visual depictions were produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means.

DE 62 at 2–3.

Among other things, the Plea Agreement includes negotiated provisions on sentencing and appeal.  (*Id.* at 3–5, 9.)  With respect to sentencing, the "parties agree[d] that the Court must impose a sentence of imprisonment of at least 15 years," but "may not [impose a sentence of imprisonment] exceed[ing] 30 years."  (*Id.* at 5.) The parties further agreed that "relevant conduct" included, but was not limited to, "all the counts in the Indictment."  (*Id.* at 4.)  Williams also waived his right to appeal.  (*Id.* at 9.)  In pertinent part, he "waive[d] any rights he may have to appeal his conviction;" he likewise "waive[d] any rights he may have to appeal his sentence," provided his sentence did not exceed the 30-year "maximum allowed by

2

Part 3 of this agreement." (*Id.*)  But Williams did not waive his right to make a collateral attack.  "Nothing in this waiver barred a claim of ineffective assistance of counsel on appeal or by collateral relief under 28 U.S.C. § 2255." (*Id.*) [1]

Williams gave his assent to the Plea Agreement *both in writing and in person*. He signed the Plea Agreement, indicating that he read, understood, and agreed to it in its entirety. (*Id.* at 12.)  In doing so, he attested that he was satisfied with his attorney's representation, with whom he had a full and complete opportunity to confer and to question. (*Id.*)  At the plea hearing held on February 15, 2017 (hereinafter the "Plea Hearing"), Williams also verbally testified that he had read the Plea Agreement over with his attorney, that he waived the right to appeal his conviction or sentence except with respect to claims of ineffective assistance of counsel, and that he was satisfied with counsel's representation.  (DE 77 at 36, 33,

---

[1] The Plea Agreement provides:

> The defendant waives any right he may have to appeal his conviction. If the defendant's sentence does not exceed the maximum allowed by Part 3 of this agreement [30 years], the defendant also waives any right he may have to appeal his sentence.  If the sentence imposed is within the guideline range as determined by Paragraph 2B [15–30 years], the government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.  Nothing in this waiver bars a claim of ineffective assistance of counsel on appeal or by collateral relief under 28 U.S.C. § 2255.

DE 62 at 9, "Appeal Waiver."

3

38.)  The Court found that Williams' plea was "knowingly, freely, and voluntarily made."  (*Id.* at 41.)

The Court held sentencing and entered judgment on August 8, 2017 (hereinafter the "Sentencing Hearing"), by which Williams was sentenced to 252 months' (21 years') imprisonment for Count 5—the lower end of the negotiated sentencing guideline range of 15–30 years.  (DE 73.)  Williams did not file a notice of appeal.  Instead, over six months later, he filed the instant *pro se* motion.  (DE 74.)  The Government responded, and Petitioner Williams replied.  (DEs 81, 82.)

### B. Instant Motion

Williams is presently incarcerated at the Federal Bureau of Prisons FCI Pekin in Illinois.  *See* www.bop.gov, "Inmate Locator," (#53951039).  Currently before the Court is his March 13, 2018 *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (DE 74.)  Williams requests that this Court vacate his 21-year sentence and instead impose a 15-year sentence—the statutory minimum.  (*Id.*)  He appears to assert three grounds for relief.  (*Id.*)  First, he alleges that he was given ineffective assistance of counsel because his attorney failed to explain that, under the terms of the Plea Agreement, the Court could consider "all the counts in the Indictment" as "relevant conduct" during sentencing.  (DEs 74, 82, 62 at 4.)  Second, Williams argues that such consideration of all the counts in the Indictment violated his constitutional rights as a matter of law.  (DEs 74, 76.)  Third, he contends

4

that this Court miscalculated his criminal history points under U.S.C. § 4A1.1(a) in two ways, namely by: (a) counting three charges within one 1990 conviction as three separate sentences worth nine points (rather than as one sentence worth three points); and, (b) including this 1990 conviction in its computation though Williams was a 17-year-old minor at the time.  (DEs 74, 82.)

In its timely filed response, the Government contends that: (1) Williams did not receive ineffective assistance of counsel; and (2) Williams' remaining claims regarding consideration of his relevant conduct and calculation of his criminal history points are each procedurally defaulted.  The Government also responds to the merits, contending that in any case, Williams' criminal history points were not miscalculated.

### C. Standard of Review

Williams brings the instant motion under 28 U.S.C. § 2255.  If a federal prisoner wants to challenge his conviction or sentence, he generally does not file a petition for a writ of habeas corpus (28 U.S.C. § 2254); instead, he has one year to file a motion to vacate his sentence under 28 U.S.C. § 2255 in the district court which imposed the sentence.  *In re* Gregory, 181 F.3d 713, 714 (6th Cir. 1999); *Capldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998).  As the statute instructs:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

5

sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C.A. § 2255(a).

A petitioner's burden in seeking collateral relief under section 2255 depends upon the type of error alleged, constitutional or otherwise. *U.S. v. Cooper*, 2012 WL 12706, *2 (E.D. Mich. Jan. 4, 2012) (Cooke, J.).  If he claims a harm due to a constitutional error, "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury verdict.'" *Humphress v. U.S.*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. U.S.*, 330 F.3d 733, 736 (6th Cir. 2003)).  On the other hand, non-constitutional errors are typically outside the scope of section 2255 relief. *U.S. v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000).  A petitioner can only prevail on a section 2255 motion alleging non-constitutional error by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. U.S.*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *U.S. v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

However, pursuing a collateral attack under "section 2255 is not a substitute for direct appeal." *Regalado v. U.S.*, 334 F.3d 520, 528 (6th Cir. 2003) ("Section 2255 is not a substitute for direct appeal, and thus a defendant cannot use it to

circumvent the direct appeal process."). A defendant-petitioner "must clear a significantly higher hurdle than would exist on direct appeal" in order to merit collateral relief. *U.S. v. Frady*, 456 U.S. 152, 167–68 (1982). [2]

### 1. Generally, rights can be waived

As a general matter, a petitioner can waive his rights to pursue an appeal and/or a collateral attack. For example, a petitioner can waive the right to appeal Sentencing Guideline issues. *U.S. v. Mader*, 251 F.3d 1099, 1103 (6th Cir. 2001); *Hunter v. U.S.*, 160 F.3d 1109, 1113 (6th Cir. 1998). He can even waive the right to collaterally attack the effectiveness of counsel. *Davila v. U.S.*, 258 F.3d 448, 450–51 (6th Cir. 2001).

Such waivers typically occur in a negotiated plea. "A defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *U.S. v. Fleming,* 239 F.3d 761, 763–64 (6th Cir. 2001).[3] In the Sixth Circuit, it is

---

[2] Defendants typically have two avenues to challenge the legitimacy of their incarceration: appeal and collateral attack. Generally, they can directly appeal: (1) from their conviction; (2) from their sentence; and, (3) after the court sets restitution. FEDERAL COURT OF APPEALS MANUAL § 15:2. Each of these is a separate final order. *Id.* A collateral attack, in contrast, "is normally an attempt to overturn a sentence by filing a *new* lawsuit" (*U.S. v. Clardy*, 877 F.3d 228, 230 (6th Cir. 2017) (emphasis added)); this attempt may come from motions under § 2254 (petition for a writ of habeas corpus) and § 2255 (motion to vacate, set aside, or correct, as here. 28 U.S.C.A. §§ 2254, 2255.

[3] The classic definition of a waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). The

well-established that plea waivers are binding.  *Mader*, 251 F.3d at 1103 (citing *U.S. v. Bazzi,* 94 F.3d 1025, 1028 (6th Cir. 1996)).  This is justified, in part, because negotiated pleas, often containing plea waivers, have become the backbone of the criminal justice system.  FED. CT. OF APP. MANUAL § 15:3 (noting 97% of federal convictions result from a plea).[4]

But, perhaps less intentionally, a petitioner can also procedurally default his claim by failing to raise it on direct appeal.  For example, a sentencing challenge not made on direct appeal is procedurally defaulted and cannot be made for the first time in a section 2255 motion.  *Weinberger v. U.S.*, 268 F.3d 346, 351 (6th Cir. 2001).  In fact, except for instances of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim.

---

surrender of constitutional rights by a plea of guilty must rest upon a valid waiver. *Boykin v. Alabama*, 395 U.S. 238 (1969).

[4] However, plea waivers are narrowly applied and strictly construed against the Government.  *Id.*  The most common question is the *scope* of the plea waiver.  *Id.* (citing *U.S. v. Toth*, 668 F.3d 374, 378–89 (6th Cir. 2012) (waiver of appeal from conviction precludes appeal from denial of leave to withdraw guilty plea).  If, for example, the waiver only covers the right to appeal from a conviction, defendants may still appeal their sentence.  At least two circuits have adopted an exhaustive framework regarding the scope and enforceability of plea waivers: (1) whether the disputed appeal falls within the *scope* of the waiver of appellate rights; (2) whether defendant *knowingly and voluntarily* waived those rights; and, (3) whether enforcing the waiver would result in a *miscarriage of justice*.  *U.S. v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc); *U.S. v. Andis*, 333 F.3d 886 (8th Cir. 2003) (en banc) (emphasis added).

*Bousley v. U.S.*, 523 U.S. 614, 621 (1998); *Peveler v. U.S.*, 269 F.3d 693, 698 (6th Cir. 2001); *Phillip v. U.S.*, 229 F.3d 550, 552 (6th Cir. 2000).

There is a way to avoid procedural default: where a defendant "has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that: (1) he had *good cause* for his failure to raise such arguments and he would suffer *prejudice* if unable to proceed; or (2) he is *actually innocent.*" *Regalado*, 334 F.3d at 528 (emphasis added). But ultimately, the "hurdle" to excuse procedural default is "intentionally high . . . for respect for the finality of judgments demands that collateral attacks generally not be allowed to do service for an appeal." *Elzy v. U.S.*, 205 F.3d 882, 884 (6th Cir. 2000).[5]

A petitioner might argue that his plea waiver barred him from pursuing claims on direct appeal, effectively condemning those claims to procedural default. *See, e.g.*, *U.S. v. Sistrunk*, 2006 WL 1738226 (E.D. Mich. June 22, 2006). The Sixth Circuit does not appear to have addressed this issue directly. *See generally Elzy*, 205 F.3d at 882, *Peveler*, 269 F.2d at 693, & *Calhoun v. U.S.*, 572 Fed. App'x 335 (6th Cir. 2014). But this issue has arguably been addressed indirectly through the

---

[5] The values promoted by waiver and the values promoted by procedural default are distinct. Ralph S. Spritzer, 126 PENN. L. REV. 473, 509 (1978). Those of waiver include concern with the protection of constitutional rights from unwitting loss; those of procedural default include concern for orderly administration and conservation of judicial resources. *Id.*

"cause and prejudice" and "actual innocence" exceptions.  *Regalado*, 334 F.3d at 528.

However, while defendants can generally avoid procedural default by establishing "cause and prejudice" or "actual innocence," defendants who enter a guilty plea might be foreclosed from establishing either.  For one, guilty pleas can "serve as an admission that [defendant] is not innocent of the crimes charged." *Vanwinkle v. U.S.*, 645 F.3d 365 (6th Cir. 2011).  The Sixth Circuit has clarified that "actual innocence" means "factual innocence," not mere legal insufficiency, and that "[i]n cases where the government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges."  *Luster v. U.S.*, 168 F.3d 913, 914 (6th Cir. 1999).

Additionally, plea waivers, in and of themselves, do not establish the "cause" element of the "cause and prejudice" excuse to procedural default.  District courts in this circuit have held that the appeal-waiver provision in a plea agreement *does not provide good cause* to excuse defendant's procedural default.  *Cooper*, 2012 WL 12706, at *9  ("Although [defendant] contends that good cause was shown because he was prohibited from pursuing an appeal under the "waiver of appeal" provisions within his Plea Agreement, such a clause does not constitute a legitimate basis under the circumstances of this case.");  *Owens v. U.S.*, 2007 WL 1041121, at *6 (W.D. Mich. 2007) (Borman, V.J.) ; *Burns v. Parris*, 2016 WL 3647158, at *5 (W.D. Tenn.

10

June 30, 2016); *see also U.S. v. Jones,* 1995 WL 321263, at *1 (4th Cir. May 30, 1995) (per curiam) ("Although Jones' plea agreement prevented him from appealing, this is not sufficient cause for his procedural default.").

Furthermore, defendants who enter plea waivers might be foreclosed from establishing "cause" altogether. This Court acknowledged as much without reaching the question in *U.S. v. Tucholski.* 2016 WL 6893282, at *2, n.4 (E.D. Mich. Nov. 22, 2016) (Leitman, J.) ("The Court further notes that [defendant] may have additional problems clearing the 'cause' hurdle. Some courts have held that where a defendant knowingly and voluntarily waives his right to file a direct appeal – as [defendant] did in the Plea Agreement – such a waiver forecloses a defendant from establishing 'cause' under Section 2255 . . . . The Court need not reach that question because, as described above, [defendant] has not otherwise established the required cause.") (citing *Owens*, 2007 WL 1041121, at *6 ('[W]here a criminal defendant's failure to appeal is based upon his knowing and voluntary abandonment of the right to appeal, he cannot possibly show 'cause' under Section 2255"); *Cooper*, 2012 WL 12706, at *9 (holding that defendant who waived right to appeal in plea agreement could not show 'cause' under Section 2255 to excuse procedural default)).

### 2. Ineffective assistance of counsel

In contrast, "cause" might be established by a showing of ineffective assistance of counsel. *See, e.g.*, *Sullivan v. U.S.*, 587 Fed. App'x 935 (6th Cir. 2014)

(holding that a petitioner attempting to rely on defective assistance to establish good cause bears the burden of demonstrating constitutionally deficient performance).

As previously noted, a federal prisoner's ineffective-assistance-of-counsel claim cannot be procedurally defaulted, even if it is not raised on direct appeal. *Bousley*, 523 U.S. at 621; *Peveler.*, 269 F.3d at 698; *Phillip*, 229 F.3d at 552. Ineffective-assistance-of-counsel claims are governed by the Supreme Court's standard in *Strickland v. Washington*. 466 U.S. 668 (1984).[6] *Strickland* "appli[es] to ineffective-assistance claims arising out of the plea process" as well. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

In *Strickland*, the Court articulated a two-part test that must be satisfied before a party can prevail on an ineffective-assistance-of-counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. But the "court must 'indulge a strong presumption' that counsel's conduct was reasonable;" in other words, "judicial scrutiny must be highly deferential." *Nichols v. U.S.*, 563 F.3d 240, 249 (6th Cir. 2009). Second, the movant must show that he was prejudiced by this deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. To satisfy this prejudice requirement in the guilty plea context, a "petitioner

---

[6] The right to counsel and to effective assistance of counsel are guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 668; U.S. CONST. amend. VI.

must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance that he *would have been acquitted*." *Parris v. U.S.*, 2009 WL 454630, at *3 (E.D. Mich. Feb. 24, 2009) (emphasis added). Failure to make the required showing under either prong of the *Strickland* test defeats the petitioner's claim. *Strickland*, 466 U.S. at 688.

### 3. Liberal construction of *pro se* petitions

Finally, it is noteworthy that the allegations of a *pro se* habeas petition, even if "vague and conclusory, are entitled to a liberal construction." *Franklin v. Rose*, 765 F.2d 82 (6th Cir. 1985) (internal citations and quotation marks omitted). The principle favoring liberal construction of *pro se* pleadings is "intended in part as an aid to non-lawyers who appear before this court." *Cook v. U.S.*, 1998 WL 69784, at *1 (6th Cir. 1998) (citing *Franklin v. Rose,* 765 F.2d 82, 84 (6th Cir. 1985)).

### D. Analysis

#### 1. Petitioner did not receive ineffective assistance of counsel

In short, Williams alleges that he was given ineffective assistance of counsel because his attorney, Sanford A. Schulman, did not explain that, under the terms of the Plea Agreement, this Court could consider "all the counts in the Indictment" as "relevant conduct" during sentencing. (DEs 74, 82, 62 at 4.) But his allegation cannot be accepted as true because it is contradicted by the record. *See Arredondo v. U.S.*, 178 F.3d 778, 782 (6th Cir. 1999). It fails both prongs of the *Strickland*

13

standard—deficiency and prejudice—and failure to make the required showing under either prong defeats Petitioner's claim. *Strickland*, 466 U.S. at 688.

First, Williams cannot show that counsel's performance was deficient. His allegation that counsel was deficient must be subjected to "rigorous scrutiny." *Nichols*, 563 F.3d at 249. Under such scrutiny, his attorney's performance was not deficient. To the contrary, counsel secured a Fed. R. Crim. P. 11 agreement that was favorable to Williams for at least three reasons: (1) the Government agreed to dismiss 12 of the 13 counts; (2) the Court sentenced Williams to a term of imprisonment below that urged by the Government; and, (3) the Court sentenced Williams to 21 years, the *lower* end of the sentencing guideline range of 15–30 years' imprisonment. (DE 73.) The fact that Williams otherwise faced "life imprisonment" under the Sentencing Guidelines was acknowledged multiple times on the record. (*See, e.g.*, DE 77 at 8, 36.) Williams has not rebutted the "strong presumption [] that counsel's behavior [was] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

Although Williams alleges that counsel did not explain the Plea Agreement's definition of "relevant conduct," he attested—in writing and in person—that he read, understood, and agreed with the Plea Agreement. (DEs 62 at 12, 77 at 33.) His attorney indicated that they had met "approximately 11 times," "and [in] many of

14

those meetings we went over the [Plea A]greement." (DE 77 at 4.) Williams now alleges that his attorney "myb [sic] came up 4 times," but Williams offered no such clarification or correction at the Plea Hearing. (DE 82; *see* DE 77.) And the Plea Agreement is not vague. It specifically defines "relevant conduct" as including "all the counts in the Indictment." The worksheets attached to the Plea Agreement likewise have a specific notation that there is a "multiple victims adjustment." (DE 62 at 4, Worksheet B.) Williams appears to regret the definition of "relevant conduct," but courts must ensure "every effort [is] made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689 (emphasis added). Notably here, without the distorting effects of hindsight, Williams stated at the Sentencing Hearing that, "I have no problem with Mr. Schulman;" "[h]e's been very helpful." (DE 77 at 13–14.)

Second, and in any event, Williams cannot show that he was prejudiced by counsel's alleged deficiency. *Strickland*, 466 U.S. at 688 (prong two). "In the guilty plea context, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Parris*, 2009 WL 454630, at *3 (citing *Hill v. Lockhart*, 474 U.S. 52). And "this determination depends in large part on a prediction of what the outcome of a trial might have been." *Id.* In other words, a petitioner must show that he would not have pleaded guilty and would have insisted on going to trial, because

15

"there would have been at least a reasonable chance that he would have been acquitted." *Id.* Thus, it is not enough for Williams to allege that he would have demanded a trial. (DE 74.) He must also show that there was a reasonable chance of acquittal. Instead, the evidence suggests that there was a reasonable chance that Williams would have been convicted *not only* of Count 5, but also of several other counts as well. (*See* DE 81 at 3–9; *see also* DE 8 at 4–5.)[7]

---

[7] Some of the evidence against Williams was discussed in my detention order, while there were still only *three* counts charged by Complaint, "including but not limited to the existence of strong evidence of the following: 1) that the defendant casually encountered a 16-year-old girl (minor victim/MV) and within a very short time was soliciting pornographic images of and from her with the apparent intent to create child pornography; 2) that the defendant sent images and videos containing child pornography to the MV by text, including images of a girl who appears to be approximately 11 to 12 years old being sodomized and engaging in other sexual activity; 3) that in his texts to the MV, the defendant claimed to be the perpetrator in the sexually assaultive conduct depicted in the aforementioned texts, images and videos, represented that he had intercourse and oral sex with his 11-year-old sister who is depicted in the video and asked the MV not to tell anyone; 3) [sic] that images of the perpetrator in the video depicting sexual activity with a minor show body markings which correspond with the defendant's tattoos; 4) that the defendant has multiple felony convictions, including, *inter alia*, convictions for felony firearm, felony assault with great bodily harm, felony stolen property, felony identity theft and has served approximately 11 years in prison; 5) that a hidden weapon and ammunition (not hidden) were found in a room which the defendant admitted to be his own bedroom, along with the cell phone which apparently corresponds with the phone number from which the above-mentioned texts were sent; 6) that evidence of identity theft and/or credit card fraud was also found in the defendant's home, including blank credit cards." (DE 8 at 4; *see also* Transcript of Detention Hearing, DE 16, at which the evidence was discussed in great detail.)

Furthermore, it "is not sufficient to show that, but for counsel's alleged errors [defendant] would have been convicted *after a trial* instead of after entering a guilty plea." *Parris*, 2009 WL 454630, at *3 (emphasis added) (citing *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002)); *see also Garrison v. E.O.*, 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001); *Holtgrieve v. Curtis,* 174 F. Supp. 2d 572, 575 (E.D. Mich. 2001). "If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him." Here, Williams was indicted on 13 separate counts. His attorney negotiated a single-count conviction and dismissal of all other counts, significantly limiting his sentencing exposure from what he would have faced at trial, down from *life* to a maximum of 30 years' imprisonment. Again, Williams has not demonstrated the probability that a trial on 13 counts would likely have resulted in less than 21 years' imprisonment.

> **2.     Petitioner is procedurally defaulted from collaterally attacking the Court's prior consideration of "relevant conduct"**

Williams contends that, as a matter of law, courts should be precluded from considering dismissed counts of an indictment during sentencing proceedings. His contention fails for multiple reasons.

Preliminarily, Williams' claim is procedurally defaulted. Except for instances of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *Bousley*, 523 U.S. at 621; *Peveler*, 269 F.3d at 698; *Phillip*, 229 F.3d at 552. Since Williams failed to challenge the Court's consideration of "relevant conduct" on direct appeal, he is precluded from raising this issue for the first time in a subsequent section 2255 motion. *See, e.g.*, *Stovall v. U.S.*, 2005 WL 1593436 (E.D. Mich. July 6, 2005). Williams cannot use section 2255 as a substitute for appeal. *Regalado*, 334 F.3d at 528. Respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal. *Frady*, 456 U.S. at 165 (1982).

Additionally, Williams has failed to allege—much less to demonstrate—"cause and prejudice" to excuse his procedural default. *Elzy*, 205 F.3d at 882 (providing that "in order to pursue this claim through a collateral attack on his sentence, he was required to demonstrate in the § 2255 proceedings before the district court cause and prejudice to excuse the double default [from failure to raise this claim at the sentencing hearing or on direct appeal] (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Frady*, 456 U.S. at 167 (1982); *Murr v. U.S.,* 200 F.3d 895, 899–900 (6th Cir.2000)).

A plea waiver clause, in and of itself, "does not constitute a legitimate basis under the circumstances of this case." *Cooper*, 2012 WL 12706, at *9; *Burns*, 2016

WL 3647158, at \*5; *see also U.S. v. Jones,* 1995 WL 321263, at \*1 (per curiam) ("Although Jones' plea agreement prevented him from appealing, this is not sufficient cause for his procedural default.").

In fact, plea waivers might foreclose defendants from establishing "cause." *Owens*, 2007 WL 1041121, at \*6 ("[W]here a criminal defendant's failure to appeal is based upon his knowing and voluntary abandonment of the right to appeal, he cannot possibly show 'cause' under Section 2255").

Regardless, it is not necessary to make either finding here, since Williams has not otherwise demonstrated good cause. *Tucholski*, 2016 WL 6893282, at n.4.

Similarly, although a liberal reading of Williams' motion might cause this Court to consider whether the ineffective assistance of counsel can nevertheless establish "cause" to excuse procedural default, there is no evidence to indicate that Williams' received such ineffective assistance of counsel.

### 3.  Petitioner is procedurally defaulted from collaterally attacking the Court's prior calculation of his criminal history points

Williams alleges that this Court miscalculated his criminal history points by: (1) counting three charges within one 1990 conviction as three separate sentences worth nine points (rather than as one sentence worth three points); and, (2) by including this 1990 conviction in its computation even though Williams was a 17-

year-old minor at the time. (DE 74 at 5.)  Again, his allegation fails on multiple fronts.

First, Williams' allegation may not be egregious enough to fall within the scope of § 2255 relief.  Since the calculation of his criminal history points is presumably a non-constitutional error, it must either be "a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (quoting *Ferguson*, 918 F.2d at 630 (internal quotation marks omitted)).  Non-constitutional errors are typically outside the scope of section 2255 relief.  *Cofield*, 233 F.3d at 407 (6th Cir. 2000).

Second, and in any event, Williams' allegation is procedurally defaulted. Since Williams failed to challenge the calculation of his criminal history points on direct appeal, he is precluded from raising this issue for the first time in a subsequent section 2255 motion.  *See, e.g.*, *Stovall*, 2005 WL 1593436, at *2.

Furthermore, the same analysis that applied to Williams' second claim applies to his third claim, so that analysis is hereby incorporated by reference.  Williams has failed to show "cause and prejudice" for his failure to raise these claims on direct appeal. *Tucholski*, 2016 WL 6893282, at *2.  Simply put, Petitioner has not provided the Court with any basis under which it can conclude that he has satisfied his

requirement to show "cause." *Id.* Thus, he is not entitled to relief under Section 2255. *Id.*

### E. An Evidentiary Hearing is not warranted

Section 2255(b) specifies the grounds for ordering an evidentiary hearing:

> Unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues[,] and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b).

It is apparent that a prisoner who files a motion under section 2255 challenging a federal conviction is entitled to "a prompt hearing" at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. In fact, a section 2255 petitioner's burden "for establishing an entitlement to an evidentiary hearing is relatively light." *Turner v. U.S.,* 183 F.3d 474, 477 (6th Cir. 1999). The hearing is mandatory "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Fontaine v. U.S.,* 411 U.S. 213, 215 (1973) (citation omitted).

But the statute "does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against

21

which) the section 2255 motion is made." *U.S. v. Todaro,* 982 F.2d 1025, 1030 (6th Cir. 1993); s*ee also Blanton v. U.S.*, 94 F.3d 227, 235 (6th Cir.1996) (holding that "evidentiary hearings are not required when . . . the record conclusively shows that the petitioner is entitled to no relief.").  And no hearing is required if the section 2255 motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or are conclusions rather than statements of fact." *Arredondo v. U.S.*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).  This is because:

> [t]he words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*Todaro*, 982 F.2d at 1030.

In the instant case, there is no material factual dispute that a hearing could address and the District Judge, to whom this recommendation is rendered, "is fully familiar with the circumstances under which a guilty plea was made." *Id.*  Williams' bare allegation that he did not understand the Plea Agreement—or understand that "relevant conduct" beyond Count 5 would be considered—and that his counsel failed to explain it to him, are contradicted by the record.  And his second and third claims are procedurally defaulted by law.  I therefore conclude that Petitioner is not entitled to a hearing on any of the allegations raised in his motion.

### F.  Conclusion

For the reasons stated above, it is recommended that the Court **DENY** the Petitioner's Motion to Vacate, Set Aside or Correct Sentence.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/*Anthony P. Patti*

Anthony P. Patti

Dated: November 13, 2018                UNITED STATES MAGISTRATE JUDGE

### Certificate of service

I hereby certify that a copy of the foregoing document was sent to parties of record on November 13, 2018, electronically and/or by U.S. Mail.

s/Michael Williams

Case Manager to the

Honorable Anthony P. Patti